# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **PROSPECT FUNDING HOLDINGS, LCC, on assignment of CAMBRIDGE MANAGEMENT GROUP, LLC,** | Civ. No. 2:17-cv-3328-KM-MAH |
| **Plaintiff,** | **OPINION** |
| **vs.** | |
| **MICHAEL BREEN, ESQ. and MIKE BREEN ATTORNEY AT LAW, P.S.C.,** | |
| **Defendants.** | |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Prospect Funding Holdings, LLC ("Prospect"), as successor in interest, seeks to enforce agreements it purchased from Cambridge Management Group, LLC ("Cambridge"). Those agreements have already been the subject of much litigation, including a Western District of Kentucky case where the court found (1) that Kentucky law applied to the agreements and (2) that the agreements violated Kentucky law and public policy. On May 10, 2017, Prospect initiated this new action in the District of New Jersey. Now before the court is defendants' motion to dismiss for lack of personal jurisdiction. (ECF No. 10). *Sua sponte,* I requested that the parties submit supplemental briefing on the applicability of issue preclusion.[1] For the following reasons, I dismiss this case on the grounds of issue preclusion.

---

[1]     I use the phrases "issue preclusion" and "collateral estoppel" throughout this opinion "interchangeably to refer to the rule ... providing the preclusive effect to a fact, question, or right determined in a prior case." *Burlington N. R.R. Co. v. Hyundai Merchant Marine Co., Ltd.*, 63 F.3d 1227, 1231 n.2 (3d Cir. 1995).

## I.    BACKGROUND[2]

### A. Factual History

#### 1. Before the Purchase Agreements

Cambridge is a litigation-funding business incorporated in Delaware with its sole office in New Jersey. (Compl. ¶¶ 9, 17-20). Cambridge signs "purchase agreements" with plaintiffs involved in pending personal injury or related litigations. (Compl. ¶ 17). Cambridge then advances money to plaintiffs. (Compl. ¶ 17). If the plaintiff recovers, Cambridge receives a portion of the proceeds. (Compl. ¶¶ 18-20). If the plaintiff does not recover, the plaintiff generally does not owe Cambridge money. (Compl. ¶ 19).

Cambridge has had a longstanding business relationship with defendant Michael Breen and his law firm, Mike Breen Attorney at Law, P.S.C. ("the Breen Law Firm"), which is based in Bowling Green, Kentucky. (Compl. ¶¶ 11, 21-23). (Herein, except when it is necessary to distinguish between them explicitly,

---

[2]    The allegations of the Complaint are taken as true at the motion to dismiss stage. Citations to the record are abbreviated as:

Compl. = Complaint (ECF No. 1)

Def. Br. = Defendants' Amended Brief in Support of Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 8)

Pl. Br. = Plaintiff's Brief in Opposition to Defendants' Motion (ECF No. 10)

Oct. 2009 Plaintiff's Agreement = October 2009 Plaintiff's Agreement to Pay Proceeds Contingent on Successful Settlement, Judgment or Verdict and Receipt of Proceeds; Agreement to Assign Proceeds (ECF No. 10-1 (Exh. A))

Oct. 2009 Plaintiff's Irrevocable Grant = October 2009 Irrevocable Grant of Lien, Assignment of Proceeds and Lien Payment Instructions (ECF No. 10-1 (Exh. A))

Oct. 2009 Att'y Ack. = October 2009 Attorney Acknowledgment of Irrevocable Lien and Assignment to Cambridge Management Group, LLC (ECF No. 10-1 (Exh. A))

Pl. Supp. Br. = Plaintiff's Legal Memorandum Regarding Non-Mutual Offensive Collateral Estoppel (ECF No. 16)

Def. Supp. Br. = Defendants' Letter Brief Addressing Non-Mutual Offensive Collateral Estoppel (ECF No. 17)

"Breen" refers to both defendants.) Breen has referred clients to Cambridge for potential agreements. (Compl. ¶ 21).

Breen represented Christopher and Holly Boling in a personal injury case against Blitz USA, Inc. ("the Boling Litigation"). (Compl. ¶ 24). (Herein, "Boling" refers to both Christopher and Holly Boling.) Breen, along with co-counsel Kirk Morgan, represented Boling. (Compl. ¶ 29).

## 2. The Purchase Agreements

Around October 23, 2009, Breen and Boling signed documents to create a third-party funding agreement regarding the Boling litigation. (Compl. ¶¶ 24-30). As to this October 2009 agreement, there are three relevant documents.

The first document is the October 2009 Plaintiff's Agreement, which was signed by Boling. It contains the following provision:

> Plaintiff acknowledges and agrees that any and all disputes that arise concerning the terms, conditions, interpretation or enforcement of this Agreement shall be determined through arbitration pursuant to the Rules and methods outlined by the American Arbitration Association in New Jersey, or in a Court of competent jurisdiction, at the election of [Cambridge] or Plaintiff. Plaintiff agrees that the laws of the State of New Jersey shall control the interpretation of this Agreement.

(Oct. 2009 Plaintiff's Agreement).

The second document was the October 2009 Plaintiff's Irrevocable Grant, also signed by Boling. The following provision addresses the process for satisfying Cambridge's assignment:

> 4. The Payment amount due [Cambridge] shall be withheld from any settlement(s), judgment(s), verdict(s) or award(s) I receive, if any, as a result of my injury and claim. The Payment is to be paid immediately after attorney's fees and case preparation cost, but prior to final distribution to me [Boling] of any settlement, judgment or verdict proceeds in accordance with the Agreements....
>
> 6. In the event of a dispute between [Cambridge] and the undersigned [Boling], I instruct my attorneys to disburse no proceeds, except for attorney's fees, disbursement and recognized

3

liens, until the matter is resolved, and that all proceeds shall remain in my attorney's escrow account.

(Oct. 2009 Plaintiff's Irrevocable Grant); (Compl. ¶ 32).

The third document is the October 2009 Attorney Acknowledgment, which was signed by Michael Breen. It was addressed to Michael Breen and co-counsel Morgan. (Compl. ¶¶ 31, 36). The document provides, in relevant part:

Attorney represents and warrants the Plaintiff's proceeds will flow through the Attorney's Trust/Escrow account and be distributed by the Attorney to Plaintiff only after first satisfying [Cambridge]'s lien.

(Oct. 2009 Att'y Ack.); (Compl. ¶ 34).

After these documents were signed, around October 23, 2009, Cambridge sent funds to Breen. (Compl. ¶¶ 30, 38).

Around March 2010, Breen, Boling, and Cambridge entered into a second agreement with similar documents, instructions, and provisions. (Compl. ¶¶ 39-43); (ECF No. 10-1 (Exh. B)). Prospect also entered into two agreements directly with Boling which are not at issue in this case. *See Boling v. Prospect Funding Holdings, LLC*, No. 1:14-CV-00081-GNS-HBB, 2015 WL 5680418, at *1 n.3 (W.D. Ky. Sept. 25, 2015).

### 3. Attempts to Enforce the Purchase Agreements

Around August 2013, Cambridge assigned its right, title, and interest in the agreements to Prospect (plaintiff here), a New York-based litigation-funding group. (ECF No. 10-1 (Exh. C)); (Compl. ¶¶ 10, 44). The Boling litigation resolved in favor of Boling around May 2014. (Compl. ¶ 44). Prospect then sought its share of the proceeds from the litigation, pursuant to the agreements Prospect had bought from Cambridge. (Compl. ¶¶ 46-47). (For convenience, I will generally ignore Cambridge and speak of the party to the agreements as Prospect.)

Breen gave Prospect multiple assurances that the proceeds from the Boling litigation would be put into the Breen Law Firm's client trust account and then disbursed to Prospect. (Compl. ¶¶ 46-48). However, Breen did not

hold the money in the trust account and did not disburse money to Prospect. (Compl. ¶ 49). Rather, the litigation proceeds were sent to the Attorney's Trust/Escrow Account of Breen's co-counsel, Morgan. (Compl. ¶ 49). Breen continues to withhold from Prospect the full amount due. (Compl. ¶ 51). Additionally, the amount reserved in the Trust/Escrow Account of co-counsel Morgan does not suffice to cover the full amount due under the agreement. (Compl. ¶ 54).

### B. Procedural History

#### 1. Prior Litigation

Since the Boling litigation was resolved, Prospect's interest in these funding agreements has been the subject of much litigation in several courts.

First, on June 19, 2014, Boling filed a lawsuit against Prospect seeking a declaratory judgment that the loan agreements are to be interpreted by and deemed unenforceable under Kentucky law. *Boling v. Prospect Funding Holdings, LLC*, No. 1:14-CV-00081-GNS-HBB, 2015 WL 5680418, at *1 (W.D. Ky. Sept. 25, 2015) (the "Kentucky DJ Action").[3]

Then, on September 4, 2014, Prospect filed suit against Boling in the Superior Court of New Jersey seeking to compel arbitration. *See Prospect Funding Holdings, LLC v. Boling*, No. 2:14-cv-6169, 2015 WL 5095155, at *1 (D.N.J. Aug. 26, 2015). On October 3, 2014, Boling removed that action to the U.S. District Court for the District of New Jersey. *Id.* On May 11, 2015, Judge Steve Mannion of the District of New Jersey transferred that case to the U.S. District Court for the Western District of Kentucky based on the first-to-file rule. *Id.* at *2. Judge Mannion denied Prospect's motion for reconsideration of the transfer order. *Id.* at *2-3.

Meanwhile, the Kentucky DJ Action continued in the Western District of Kentucky. Boling sought summary judgment regarding the forum-selection

---

[3]    That lawsuit involved the October 2009 and March 2010 agreements originally entered into with Cambridge, as well as May 2012 and April 2013 agreements with Prospect that are not at issue in this case. *See Boling*, 2015 WL 5680418, at *1 & n.3.

clause and the choice of law. *Boling*, 2015 WL 5680418, at *5. The court granted both motions. *Id.* at *5-8. First, the court held that Boling was within his contractual rights to select the Western District of Kentucky. *Id.* at *6-7. The Western District of Kentucky thus retained jurisdiction over the loan agreements. *Id.* Second, using the most "significant relationship test," the court held that Kentucky law applied to the enforceability of these agreements. *Id.* at *7-8. The court denied Prospect's motion for reconsideration of those rulings. *Boling v. Prospect Funding Holdings, LLC*, 1:14-CV-00081-GNS-HBB, 2016 WL 1611383 (W.D. Ky. Apr. 21, 2016).

After the Western District of Kentucky held that Kentucky law applied, Boling and Prospect cross-moved in the Kentucky DJ Action for summary judgment on Boling's claims. *Boling v. Prospect Funding Holdings, LLC*, 1:14-CV-00081-GNS-HBB, 2017 WL 1193064, at *1 (W.D. Ky. Mar. 30, 2017). Boling argued that (1) the agreements violated Kentucky's public policy against third-party litigation financing with a profit motive and (2) the high interest rates violated Kentucky's usury laws.[4] *Id.* at *2. The court agreed with Boling on both issues and granted the motion for partial summary judgment on March 30, 2017. *Id.* at *2-7.

In the Kentucky DJ Action, Prospect had filed with its answer counterclaims for unjust enrichment, promissory estoppel, breach of the duty of good faith and fair dealing, negligent misrepresentation, and conversion. After the court granted summary judgment on Boling's claims, Prospect's counterclaims remained pending. *Id.* at *8.

On September 9, 2015, while the Kentucky DJ Action was ongoing, Prospect filed another action against Breen in the Superior Court of New Jersey. On November 6, 2015, Breen removed that case to the U.S. District Court for the District of New Jersey based on diversity jurisdiction. *Prospect Funding Holdings, LLC v. Breen*, No. 2:15-cv-7945-SDW-LDW (D.N.J.) (2:15-cv-

---

[4]     The court calculated that the agreements at issue had an annual effective interest rate of nearly 80%. *Boling*, 2017 WL 1193064 at *1 n.4, *7 n.6.

7945 ECF No. 1). Breen filed counterclaims. Prospect moved to dismiss those counterclaims and Breen moved to transfer venue to the Western District of Kentucky. (2:15-cv-7945 ECF Nos. 6, 16). On April 18, 2016, Judge Wettre issued an order to show cause why the case should not be remanded to the Superior Court of New Jersey. (2:15-cv-7945 ECF No. 25). Ultimately, after a settlement conference on July 7, 2016, the parties agreed to terminate the 2:15-cv-7945 action without prejudice. (2:15-cv-7945 ECF No. 45).

### 2. Current Litigation

On May 5, 2017, after the Western District of Kentucky held adversely to Prospect that the agreements in issue were unenforceable, Prospect filed this new action against Breen in the District of New Jersey. (Compl.).

Prospect's Complaint asserts five counts against Breen:

- **Count 1:** Breach of contract (Compl. ¶¶ 55-60)
- **Count 2:** Breach of fiduciary duty (Compl. ¶¶ 61-66)
- **Count 3:** Conversion (Compl. ¶¶ 67-70)
- **Count 4:** Breach of duty of good faith and fair dealing (Compl. ¶¶ 71-75)
- **Count 5:** Promissory estoppel (Compl. ¶¶ 76-80)

Breen filed a motion to dismiss for lack of personal jurisdiction on August 22, 2017 (ECF No. 7), and then filed an amended motion on August 25, 2017 (ECF No. 8).

Reviewing the papers and the prior history of litigation, I determined that I should consider whether issue preclusion bars this case from going forward.[5] I ordered supplemental briefs on that issue, which the parties have submitted. (ECF No. 15; Pl. Supp. Br; Def. Supp. Br.).

---

[5]     Breen mentioned the previous Western District of Kentucky action in their motion to dismiss for lack of personal jurisdiction, (Def. Br. 1, 3-6), and Prospect briefly mentioned the case in their response. (Pl. Br. 6-7). Breen did not assert issue preclusion as an affirmative defense and the issue was not squarely presented by the motion.

## II.    LEGAL STANDARD

Issue preclusion "prevents parties from relitigating an issue that has already been actually litigated." *Peloro v. United States*, 488 F.3d 163, 174 (3d Cir. 2007). "[T]he principle is simply that later courts should honor the first actual decision of a matter that has been actually litigated." 18 Wright & Miller, Federal Practice & Procedure § 4416 (3d ed. 2016). This doctrine ensures that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979); *see Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979); *Burlington N. R.R. v. Hyundai Merchant Marine Co.*, 63 F.3d 1227, 1232 (3d Cir. 1995). Issue preclusion applies when:

   (1) [T]he issue sought to be precluded [is] the same as that involved
       in the prior action;
   (2) that issue [was] actually litigated;
   (3) it [was] determined by a final and valid judgment; and
   (4) the determination [was] essential to the prior judgment.

*Peloro*, 488 F.3d at 175 (quoting *Burlington N. R.R.*, 63 F.3d at 1231-32).

The parties in the two suits do not need to be identical for issue preclusion to apply. *Burlington N. R.R.*, 63 F.3d at 1232. A defendant who was not a party to the first suit can, where the requirements of the doctrine are met, use issue preclusion defensively against a plaintiff to prevent the plaintiff from relitigating an issue it lost in the earlier suit. *Id.*

The underlying principles of issue preclusion include securing peace for the parties and promoting the court's efficient resolution of claims. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980). Thus issue preclusion is concerned with "the defendant's interest in avoiding the burdens of twice defending a suit," and also "the avoidance of unnecessary judicial waste." *Arizona v. California*, 530 U.S. 392, 412-13 (2000) (citing *United States v. Sioux Nation of Indians*, 448 U.S. 371, 432 (1980) (Rehnquist, J., dissenting)). Moreover, as the first Justice

Harlan long ago explained, issue preclusion is necessary for courts to function as effective tribunals:

> This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue, and actually determined by them.

*S. Pac. R.R. Co. v. United States*, 168 U.S. 1, 49 (1897).

The court may dismiss, *sua sponte*, claims barred by issue preclusion. *Ciarrocchi v. Kennedy Mem. Hosp.*, 378 F. App'x 239, 240-41 (3d Cir. 2010); *King v. East Lampeter Twp.*, 69 F. App'x 94 (3d Cir. 2003). Although a defendant generally must raise issue preclusion as an affirmative defense, "if a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised." *Arizona v. California*, 530 U.S. at 412-13 (quoting *Sioux Nation of Indians*, 448 U.S. at 432 (Rehnquist, J., dissenting)).

## III.   DISCUSSION

Issue preclusion is appropriate in this case. Although Breen was not a party to the prior Western District of Kentucky litigation, Prospect was. Prospect has sued in this district, seeking to relitigate the precise issue decided against it in the Kentucky DJ Action: whether the agreements are governed by Kentucky law and valid. As discussed above, issue preclusion may bar a party from asserting an already-decided issue against a new defendant in a new lawsuit. *Burlington N. R.R.*, 63 F.3d at 1232; *Parklane Hosiery Co.*, 439 U.S. at 326. To put it another way, it is not controversial that a new party may assert issue preclusion against a party who appeared in the prior lawsuit and had the issue decided adversely to it.

Issue preclusion applies when (1) the same issue was in controversy in the prior litigation; (2) the issue was actually litigated; (3) the issue was

determined by a final and valid judgment on the merits; and (4) the determination was essential to the prior judgment. *Peloro*, 488 F.3d at 175. I will address each of these requirements in turn.

### A. Same Issue

Both cases involve the same issue. In the Kentucky DJ Action, Prospect sought to enforce its agreements with Boling. *Boling v. Prospect Funding Holdings, LLC*, 1:14-CV-00081-GNS-HBB, 2017 WL 1193064, at *1 (W.D. Ky. Mar. 30, 2017). The Western District of Kentucky found that Kentucky law applied to the agreements, Kentucky law prohibits third-party litigation funding with a profit motive, and the interest terms violated Kentucky's usury statute. *Id.* at *2-*6. That court held that these agreements are void under Kentucky law. *Id.* In this case, Prospect argues that New Jersey, not Kentucky, law applies to the same agreements (Pl. Br. 7), and that the agreements are valid, not void. (Pl. Br. 6-7; Compl., *passim*).

Prospect argued in the earlier case that these agreements were enforceable against Boling; it argues in this case that they are enforceable against Boling's lawyer. That lawyer, Breen, was supposed to play the role in the transaction of holding the proceeds of the Boling litigation and disbursing funds that Boling owed to Prospect under the agreements. The only significant difference between the cases is the identity of Prospect's opposing party. The same issue is at the heart of both cases.

### B. Actually Litigated

The issue of whether the agreements are enforceable was actually litigated in the Kentucky DJ action. That court ruled explicitly that they were legally void and not enforceable.

Courts have found that an issue was not actually litigated when it was not decided in prior litigation, arose out of separate transactions and facts, or was not necessary to the judgment. 18 Wright & Miller, Federal Practice & Procedure § 4419 (3d ed. 2016). Other scenarios under which an issue was raised in some fashion, but not actually litigated, have included administrative

proceedings that are not adversarial, dismissals for lack of subject matter jurisdiction, or settlements where the parties did not intend their agreement to have preclusive effect. *Id.; see Arizona v. California*, 530 U.S. 392, 414 (2000).[6]

None of those considerations apply here. In this case, the issue of whether the agreements with Prospect were enforceable was fully litigated and central to the parties' dispute. It was decided on the merits at the summary judgment stage. *Boling*, 2017 WL 1193064, at *2-7. Prospect fully briefed the issue and lost. *Id.*

### C. Final Valid Judgment on the Merits

For issue preclusion to apply there must have been a final valid judgment on the merits in the prior case. *Peloro*, 488 F.3d at 175. For example, "[a] judgment dismissing an action for want of personal jurisdiction ... may be clearly final and preclusive on the jurisdiction issue, but it is not on the merits for purposes of claim preclusion." 18 Wright & Miller, Federal Practice & Procedure § 4432 (3d ed. 2016).

In this matter, Judge Stivers in the Western District of Kentucky ruled on Boling's motion for summary judgment that the agreements were governed by Kentucky law and were not enforceable under Kentucky law. *Boling*, 2017 WL 1193064, at *2-7. He then entered summary judgment for Boling, holding that the agreements were void because they violated Kentucky's prohibition on third-party litigation funding with a profit motive and had a usurious interest rate. *Id.* That constitutes a final valid judgment on the merits.

Prospect asserts that the award of summary judgment in the Kentucky DJ Action is not "final" because the court granted only *partial* summary judgment, as Prospect's counterclaims remain unadjudicated. (Def. Supp. Br.

---

[6] A related concern is when a defendant did not vigorously litigate a case for small or nominal damages and then offensive collateral estoppel is used against that defendant in a much more consequential case. Per *Parklane Hosiery*, it may be unfair to use offensive collateral estoppel in such circumstances. 439 U.S. at 330. I address that concern, which is not a substantial one under these circumstances, in subsection III.F(2).

6-8). Partial summary judgment, however, can constitute a "final" judgment for the purposes of issue preclusion. The Third Circuit has explained that, for purposes of issue preclusion, the prior decision need only be "final" in the sense of being sufficiently firm:

> There is no bright-line rule regarding what constitutes a "final judgment" for issue preclusion. Instead, we have found that a prior adjudication of an issue in another action must be "sufficiently firm" to be accorded conclusive effect. We have stated that finality for purposes of issue preclusion is a more pliant concept than it would be in other contexts, and that finality may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again. Factors that courts consider when determining whether the prior determination was sufficiently firm include: whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed.

*Free Speech Coalition, Inc. v. Att'y Gen.*, 677 F.3d 519, 541 (3d Cir. 2012) (internal citations, internal quotation marks, and footnote omitted); *see Burlington N. R.R.*, 63 F.3d at 1233 n.8; *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991); *Dyndul v. Dyndul*, 620 F.2d 409, 412 (3d Cir. 1980); *see also* Restatement (Second) of Judgment § 13 (1982).

In the Kentucky DJ Action, the parties were able to fully brief the summary judgment motion and were fully heard. Judge Stivers gave a reasoned opinion that addressed their arguments. He entered summary judgment against Prospect on Boling's claims. That summary judgment was "partial" only in the sense that it did not address Prospect's counterclaims (because neither party's motion included those counterclaims). 2017 WL 1193064, at *8. There is no indication that Judge Stivers intended his ruling on Boling's claims to be provisional, or that he would be inclined to revisit it. (Nor, apparently, did Prospect move for reconsideration.) I perceive no basis for permitting these issues to be litigated again.

The only factor weighing against finality is that the award of summary judgment in the Western District of Kentucky is not presently appealable. The only thing that stands in the way of appeal, however, is Prospect's own counterclaims. Until those counterclaims are resolved, the district court's judgment will not be a final decision that is appealable to the U.S. Court of Appeals for the Sixth Circuit. *See* 28 U.S.C. 1291.[7] But in lieu of quickly pursuing the counterclaims to a conclusion and appealing the judgment, Prospect instead opted to bring a new action in this district, hoping for a different resolution of the same issues it had lost.

For those reasons, I find that the Western District of Kentucky's grant of summary judgment was "sufficiently firm" to have preclusive effect. There is no good reason for permitting this issue to be relitigated.

### D. Essential to the Prior Judgment

Finally, the Western District of Kentucky's determination that the agreements between Prospect and Boling were invalid was essential to its judgment. Boling sought a declaratory judgment that the agreements were governed by and unenforceable under Kentucky law. *Boling*, 2017 WL 1193064, at *2. Boling moved for summary judgment on these issues; Prospect (as successor in interest to Cambridge, the other party to the agreements) opposed the motion. The motion was granted in Boling's favor. *Id.* at *2-7. The court's judgment was thus squarely based on the unenforceability of the agreements under Kentucky law.

Prospect argues that the agreements between Prospect and Boling are "separate and distinct" from the Attorney Acknowledgement between Prospect and Breen. This argument is unavailing. The Prospect–Breen Attorney Acknowledgement exists to facilitate the Prospect–Boling agreement; it does not have independent force. It provides only that Breen will hold and deliver to Prospect such funds "as may be due and owing pursuant to paragraph 3(e) of

---

[7]     Another option might have been to seek certification of the issues for interlocutory appeal. *See* 28 U.S.C. § 1292(b); Fed. R. App. P. 5.

13

[Boling's] Agreement, necessarily to satisfy in full all the Agreements signed by [Boling]." (Oct. 2009 Att'y Ack). If the underlying agreements between Prospect and Boling are invalid, then no funds are owing to Prospect under the agreements, and no obligation to hold and disburse such funds arises under the Attorney Acknowledgement.

### E. Prospect's Citation of New Jersey Law

Prospect argues that the Western District of Kentucky "failed to make any determination under New Jersey law, which is the correct choice of law." (Pl. Br. 7). This court will not collaterally attack its sister court's judgment. Whether the Western District of Kentucky *correctly* applied the law is immaterial to the issue-preclusion analysis. If that court incorrectly applied Kentucky rather than New Jersey law, Prospect's remedy is in the United States Court of Appeals for the Sixth Circuit. *See Delaware River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 576 (3d Cir. 2002). "Error in a prior judgment is not a sufficient ground for refusing to give it preclusive effect." *Id.* An appeal is the correct method of questioning a federal district court judgment; collateral litigation in another federal district court is not.

### F. Fairness Considerations When Parties Are Not Identical

In addition to the factors outlined above, a court must consider whether preclusion would be fair. The application of issue preclusion is a discretionary matter for the court and, as a rule of efficiency, should not be applied unless the court is fully satisfied with its fairness. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979).

In general, collateral estoppel protects litigants from the burden of relitigating an identical issue, promotes judicial economy, and gives plaintiffs an incentive to join all defendants in a single lawsuit. *See Parklane Hosiery*, 439 U.S. at 326-30; *Meyers*, 61 F. Supp. 3d at 523. "Courts are particularly attentive to potential unfairness in cases of 'offensive' rather than 'defensive' collateral estoppel." *Mann v. Estate of Meyers*, 61 F. Supp. 3d 508, 522 (D.N.J. 2014); *see also Parklane Hosiery*, 439 U.S. at 329. I find the fairness

14

considerations identified in the offensive collateral estoppel cases helpful, and I consider them here.

*Parklane Hosiery* discusses four circumstances that weigh against the application of (offensive) collateral estoppel: **(1)** when a plaintiff engages in "wait and see" tactics; **(2)** when a party seeks to use a judgment in a prior suit for small or nominal damages in a more consequential suit; **(3)** when there are inconsistent judgments against the defendant; and **(4)** where the second action affords the defendant procedural opportunities unavailable in the first action that could alter the outcome. I address each.

**(1)** First, Breen has not engaged in "wait and see" tactics. The concern is that "[s]ince a plaintiff will be able to rely on a previous judgment against a defendant but will not be bound by that judgment if the defendant wins, the plaintiff has every incentive to adopt a 'wait and see' attitude, in the hope that the first action by another plaintiff will result in a favorable judgment." *Parklane Hosiery*, 439 U.S. at 330. The *Meyers* court outlined how this might occur:

> A potential plaintiff (P2) might hedge its bets by letting someone else (P1) sue first. If P1 is successful, P2 can jump on the bandwagon, file a separate action and invoke offensive collateral estoppel. If P1 is not successful, P2 may file another suit anyway (or wait to see what happens with P3, 4, and 5). Thus, unless a court polices the process for fairness, "offensive use of collateral estoppel will likely increase rather than decrease the total amount of litigation, since potential plaintiffs will have everything to gain and nothing to lose by not intervening in the first action."

*Meyers*, 61 F. Supp. 3d at 523 (citing *Parklane Hosiery*, 439 U.S. at 330).

No such concerns are present here. Breen is not a "wait and see" plaintiff. Rather, Prospect, after suffering an out-of-district loss, went in search of a new defendant, Breen, in a separate district.

**(2)** Second, the prior suit was not one in which the parties did not have an incentive to fully litigate. For example, "[i]f a defendant in the first action is sued for small or nominal damages, he may have little incentive to defend

vigorously, particularly if future suits are not foreseeable." *Parklane*, 439 U.S. at 331. Application of collateral estoppel may not be fair in a subsequent suit for a much greater sum. For instance, in *Berner v. British Commonwealth Pac. Airlines*, the application of offensive collateral estoppel was denied where defendant did not appeal an adverse judgment awarding damages of $35,000 and defendant was later sued for over $7 million. 346 F.2d 532 (2d Cir. 1965). No such circumstances are present in this case.

(3) Third, there are not inconsistent judgments against any party. Collateral estoppel may not be fair where a party has the opportunity to cherry-pick favorable prior judgments while ignoring unfavorable ones:

> In Professor Currie's familiar example, a railroad collision injures 50 passengers all of whom bring separate actions against the railroad. After the railroad wins the first 25 suits, a plaintiff wins in suit 26. Professor Currie argues that offensive use of collateral estoppel should not be so applied as to allow plaintiffs 27 through 50 automatically to recover.

*Parklane Hosiery*, 439 U.S. at 330 n.14 (citing Brainerd Currie, *Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine*, 9 Stan. L. Rev. 281, 285-86 (1957)); *see* Restatement (Second) of Judgments § 88(4).

Once again, no such unfairness is present here. Breen did not pick and choose, but cited the one relevant prior judgment when Prospect sued it here in New Jersey.

(4) Fourth, this action does not afford a party procedural opportunities unavailable in the first action that could alter the outcome. If a defendant, for example, "was forced to defend in an inconvenient forum and therefore was unable to engage in full scale discovery or call witnesses, application of offensive collateral estoppel may be unwarranted." *Parklane Hosiery*, 439 U.S. at 331 n.15. This issue is "particularly acute" where the party against whom estoppel is asserted "will not have chosen the forum in the first action." *Id.* It is true neither Prospect nor Breen chose to litigate the prior case in the Western District of Kentucky. That was a declaratory judgment action instigated by

Boling. That federal district court, however, provides the same procedural protections as this court. Moreover, that jurisdiction is one in which Prospect apparently sought and conducted business. Prospect has not established any procedural disadvantage that would have changed the outcome of the case.

These considerations of fairness confirm my decision that it is fair and appropriate to apply issue preclusion. The summary judgment awarded in the Western District of Kentucky DJ Action case has preclusive effect here as to the issues of the applicability of Kentucky law and the invalidity of the underlying agreements. That court's resolution of those issues requires dismissal of Prospect's case here.

## IV.    CONCLUSION

For the foregoing reasons, I dismiss this case on the grounds of issue preclusion. An appropriate order accompanies this Opinion.

Dated: February 5, 2018

**KEVIN MCNULTY**
**United States District Judge**